UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MICHAEL HARRIS, et al., *individually and on behalf of all others similarly situated,* | ) ) ) | |
| | ) | Case No.: 1:25-cv-107 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Curtis L. Collier Magistrate Judge Michael J. Dumitru |
| | ) | |
| LEE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>**M E M O R A N D U M**</u>

Before the Court is a motion by Plaintiffs Michael Harris, Christopher Vaught, Caleb Nabors, Katelyn Butler, Brittany Kubba, and Dennis Goodine (collectively "Plaintiffs") for an order preliminarily approving the Rule 23 settlement agreement in this action. (Doc. 31.) Plaintiffs also request that the Court conditionally certify the Settlement Class, appoint Leanna Loginov and J. Gerard Stranch as Class Counsel, appoint Plaintiffs as class representatives, approve the Notices, Notice Program, Claim Form, and Claim Process, and the opt-out or objection procedures, appoint Kroll as the settlement administrator, stay the action pending final settlement approval, and schedule a final approval hearing. (Doc. 31 at 1–2; Doc. 37 at 1.) Defendant does not oppose the motion. (*See* Doc. 31 at 1.)

## I.     <u>BACKGROUND</u>

This action stems from a data breach that occurred on March 22, 2024, when an unknown actor gained access to Defendant Lee University's systems and accessed the private information of 136,928 individuals, including students, faculty, and staff. (Doc. 33 at 3.) In April 2024, ransomware gang Medusa claimed responsibility for the data breach, and demanded one million

dollars in ransom. (Doc. 31-1 ¶ 4.) Defendant begin contacting those individuals whose information was compromised on March 25, 2025. (*Id.*)

On April 1, 2025, Plaintiff Michael Harris filed a class-action complaint in the Eastern District of Tennessee on behalf of himself and others similarly situated. (Doc. 31-1 ¶ 6.) Six related putative class action suits followed arising out of the same data breach, and the related cases were consolidated. (*Id.* ¶¶ 7–9.) On August 25, 2025, Plaintiffs filed a consolidated class action complaint. (*Id.* at ¶ 10.) The consolidated class action complaint included claims for negligence, unjust enrichment, breach of implied contract, invasion of privacy, and declaratory/injunctive relief. (Doc. 18 at 49–58.) The parties considered "the risk, expense, and delay of continued litigation," and "began discussing resolving the Action[1] through settlement." (Doc. 33 at 3.) And on November 14, 2025, the parties filed a joint notice of settlement and request to stay the case (Doc. 25), which the Court granted (Doc. 26), and then worked to finalize the settlement agreement. (Doc. 33 at 3.)

The settlement agreement defines the class as "[a]ll persons whose Private Information was potentially compromised in the Data Breach, including all individuals to whom Defendant sent an individual notification letter regarding the Data Breach." (*Id.*) It provides for a $1,750,000.00 settlement fund, which is the total amount Defendant agrees to pay to settle this action. (*Id.* at 4.) Following the payment of costs and fees, this fund will provide class members the ability to seek class member benefits, which include claims for credit monitoring, reimbursement of documented expenses and losses up to $5,000, and a *pro rata* cash payment. (*Id.* at 3; Doc 31-1 ¶ 71).

The parties agree that Kroll Settlement Administration should serve as the settlement administrator. (Doc. 33 at 5.) The parties agree to jointly oversee the settlement administrator,

---

[1] Any capitalized words not otherwise defined in this order have the meaning assigned to them in the quoted document.

2

who will be responsible for administering all aspects of the settlement agreement. (*Id.* at 4–5.) Defendant will provide Kroll with a list of class members, and Kroll will begin the notice program. (*Id.* at 5.)

Plaintiffs now move for preliminary approval of the settlement agreement. Defendant does not oppose the motion. (*See id.* at 1.) The Court will first address whether the settlement agreement should be preliminarily approved. The Court will then address the proposed class notice and opt-out procedures, the proposed class appointments, and the request to stay the case pending final approval.

## II. <u>DISCUSSION</u>

The parties seek preliminary approval of the settlement agreement under Rule 23 of the Federal Rules of Civil Procedure. Approval of a Rule 23 class-action settlement occurs in three steps: "(1) the court must preliminarily approve the settlement; (2) the class members must be given notice of the proposed settlement; and (3) the court must hold a hearing to determine whether the proposed settlement is fair, reasonable and adequate." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001)).

### A. Rule 23 Preliminary Approval of Settlement and Class Certification

At the preliminary approval stage, the Court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). At this stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Lott v. Louisville Metro Gov't*, No. 3:19-cv-271, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-

3

cv-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015)). The Court will address both requirements.

### 1. Likelihood of Approval

To preliminarily approve the settlement agreement under Rule 23(e)(2), the proposed settlement must be fair, reasonable, and adequate. To determine this, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). "The first two factors are procedural in nature, while the latter two direct the Court to examine the substance of the settlement." *In re OnePoint Patient Care LLC, Data Breach Litig.*, No. 3:24-cv-649, 2026 WL 74403, at *3 (W.D. Ky. Jan. 9, 2026). Several factors guide this inquiry: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("UAW").

#### a. Adequate Representation and Arm's Length Negotiation

The class representatives and class counsel have adequately represented the class and engaged in arm's length negotiation. "Courts presume the absence of fraud or collusion in class

4

action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). "The focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A)–(B), 2018 Advisory Committee Notes.

Here, the class representatives have adequately represented the settlement class. They "made themselves available to Class Counsel when necessary, reviewing filings, provided Class Counsel with documents and other evidence, and helped prosecute this Action diligently." (Doc. 33 at 14; Doc. 32 ¶ 18.) Plaintiffs have been involved from the very beginning in researching counsel, providing counsel with information, participating in discussion and interviews, and putting their names into the public record. (Doc. 32 ¶ 19.)[2]

Class counsel has also adequately represented the class and engaged in arm's length negotiation. Class counsel "possesses significant experience leading the prosecution of complex class action matters, including hundreds of data breach class actions all over the country." (*Id.* ¶ 20). Furthermore, the agreement was procedurally adequate. The agreement was reached "after significant research and investigation into the relevant facts and applicable law, including all relevant documents and data." (*Id.* ¶ 10.) It was "the result of vigorous arm's-length negotiations between the Parties with no collusion or fraud, including informal discovery." (*Id.*) Therefore, the Court finds that prongs A and B of Rule 23(e)(2) are satisfied.

>    **b.      Adequacy of the Relief and Fair Treatment of the Class Members**

---

[2] The joint declaration of class counsel stated that "proposed Class Representatives put their names and reputations into the public record to secure this result for the Settlement Class, which is especially pertinent in this particular Action given the nature of Defendant's business as an addiction treatment provider and potential stigma receiving Defendant's services may invite." (Doc. 32 ¶ 19). Defendant is a University, not an addiction treatment provider. Therefore, the Court concludes this is a typographical error and disregards it.

The next two factors require the Court to consider whether the relief provided for the class is adequate and whether the proposal treats class members equitably relative to each other. The Court will first address adequate relief and then equitable treatment.

To address the adequacy of the requested relief, courts should consider

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). This analysis "overlap[s] with the *International Union* factors requiring that the Court evaluate the 'complexity, expense, and likely duration of the litigation' and the 'likelihood of success on the merits.'" *In re Flint Water Cases*, 571 F. Supp. 3d 746, 781 (E.D. Mich. 2021) (quoting *UAW*, 497 F.3d at 631). Here, the Court finds that the relief is adequate.

The costs, risks, and delay of trial favor settlement. Courts have recognized that "data breach litigation is inherently complex." *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 WL 1557366, at *20 (E.D. Pa. Apr. 9, 2024). Here, the parties state the same. They represent that "[t]he complexity, expense and likely duration of the litigation are substantial" and that "the amount of data expert analysis and testimony needed to bring this Action to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter." (Doc. 32 ¶ 23). Plaintiffs and Plaintiffs' counsel balance this with strong belief in the merits of Plaintiffs' claims, while recognizing the risks of continuing to trial in the face of "numerous, and potentially dispositive defenses." (*Id.* ¶ 22.) The Court finds that the costs and risks associated with trial, including multiple expensive expert witnesses, tip this factor in favor of preliminary approval.

6

The method of disbursement is also effective.  This analysis "requires the Court to ensure that claims processing (1) facilitates filing legitimate claims and (2) is not unduly demanding." *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N.D. Ohio 2023).  Here, there is a "straightforward Claim Process for Settlement Class Members to submit claims."  (Doc. 33 at 18.) It is in plain language (Doc. 32 ¶ 26.)  Claim Forms may be submitted either online or by mail, and they will be reviewed by the Settlement Administrator within thirty days.  (Doc. 31-1 ¶¶ 90– 92, 97.)  Payouts will be made by e-check or paper check.  (*Id.* ¶ 102.)  This procedure is clear and no more unduly demanding than any other communication method. The Court has reviewed the settlement agreement's procedures for claim denial and processing (*Id.*  ¶ 90–103) and finds that the processes for requesting more information or rejecting claims and providing deficiency notices (*id.* ¶ 95) are also not unduly demanding.  These processes allow the class members to receive notice and instructions on how to remedy any issues with their claim, and are clear in the information they communicate and facilitate the filing of legitimate claims.

Lastly, the proposed award of attorney fees is reasonable.  The settlement agreement provides that "Class Counsel shall apply to the Court for an award of attorneys' in an amount not to exceed $583,333.33 of the Settlement Fund."  (*Id.* ¶ 107.)  The settlement fund is $1,750,000.00; therefore, the attorney fees award is one-third of the total settlement fund.   "One-third of the total settlement value is within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."  *Smith v. Specialty Networks, LLC*, No. 1:24-cv-286, 2025 U.S. Dist. LEXIS 134484, at 16 (E.D. Tenn. July 15, 2025) (citing *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014)); *see also Back v. Ray Jones Trucking, Inc.*, No. 4:22-cv-5, 2025 U.S. Dist. LEXIS 162558, at *18 (W.D. Ky. Aug.

7

21, 2025) ("The rate of one-third the gross settlement amount is well within the range of attorneys' fees previously approved by other class action settlements by the Sixth Circuit and this Court.").

Furthermore, the proposed award treats class members equitably relative to each other. All members of the settlement class are eligible to file claims for pro rata cash payments and credit monitoring. (Doc. 31-1 ¶ 74.) And some class members who have experienced documented losses may submit a claim for those documented losses up to $5,000. (*Id.*) Therefore, the Court agrees that all class members are treated equitably relative to the strength of their claim and their documented losses.

A word of caution. Class representative service awards may affect, either directly or indirectly, the question of equitable treatment. *Tate v. Eyemed Vision Care, LLC*, No. 1:21-cv-36, 2025 U.S. Dist. LEXIS 145042, at 20–21 (S.D. Ohio July 29, 2025). Named Plaintiffs will receive "reasonable Service Awards for the Class Representatives of up to $2,500 each, at an amount not to exceed $17,500 in total for the seven (7) Class Representatives, subject to Court approval." (Doc. 33 at 7.) These are meant "to compensate the Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with any anticipated discovery, and answering Class Counsel's questions." (*Id.*) "Such payments generally 'do[] not raise a red flag' in the settlement-approval inquiry 'because the class representative and class member are not similarly situated in regard to… the incentive payment: the class representative did extra work and took extra risk to earn that.'" *Saldana v. Amazon.com, Inc. (In re Amazon.com, Inc.)*, 2024 U.S. Dist. LEXIS 238956, at *35 (W.D. Ky. Dec. 23, 2024) (alteration in original) (quoting *Newberg on Class Actions* § 11.38 (3d ed. 1992)). But, "[a]lthough the Sixth Circuit has not defined the outer limits for service awards, a survey of the precedent

suggests service awards are appropriate if, absent proof of the lead plaintiff's extraordinary involvement, they are at most 10 times the amount that the unnamed class members would receive." *Strano v. Kipliner Wash. Editors, Inc.*, 646 F. Supp. 3d 909, 913 (E.D. Mich. 2022). Here, the $2,500 service award is twenty-five times more than the pro rata cash payment of $100 (Doc. 31-1 at 52). Therefore, "such a substantial service award will require substantial justification." *Tate*, 2025 U.S. Dist. LEXIS 145042, at *21. The Court will scrutinize the service award amounts as part of the final approval process.

The remaining UAW factors include "(5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. An analysis of these factors also favors settlement. The motion is unopposed and class representatives and class counsel both support settlement. (*See* Doc. 33 at 22.) The notice program has not commenced, so the parties state that "[the sixth] factor is not quantifiable at the Preliminary Approval stage." (*Id.* at 23.) And the settlement serves the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205). Here, resolving this case through a settlement conserves judicial resources in an unpredictable class-action lawsuit with a difficult and unwieldy subject matter.

### 2. Likelihood of Settlement: Class Certification

The Court must now determine whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). A court may certify a class for settlement purposes where the proposed class "satisfies each of Rule 23(a)'s requirements

and [] falls within one of three categories permitted by Rule 23(b)." *UAW*, 497 F.3d at 625.  The Court will start with the requirements of 23(a).

### a. Rule 23(a) Requirements

Rule 23(a)(1)–(4) requires numerosity, commonality, typicality, and adequacy of representatives for class certification.

First, the class is numerous.  Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "The plaintiff is not required to 'establish that it is impossible to join all members of the proposed class[,]' but simply that joinder 'would be difficult and inconvenient.'"  *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (alteration in original) (quoting *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992).  While no strict numerical test exists, "substantial numbers usually satisfy the numerosity requirement."  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (internal quotation marks omitted).   The class here is substantial.  It consists of approximately 136,928 individuals (Doc. 31-1 at 2), which is a number large enough to make joinder difficult and inconvenient.

Second, there are common questions of law and fact.  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *General Tel. Co. v. Falcon*, 457 US. 147, 157 (1982)).  The question is not "whether common questions *predominate*, but … whether there *is* even a single common question.'"  *Id.* at 359 (internal citations and quotations omitted).  The putative members' claims must depend on a common contention capable of class-wide resolution, where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.

Here, there are several common questions: whether Defendant failed to implement reasonable cybersecurity safeguards to protect private information, whether Defendant owed Plaintiffs a duty of care to implement those safeguards, and whether Defendant breached that duty. (Doc. 33 at 10). All claims stem from the same data breach incident. *See Savidge v. Pharm-Save Inc.*, 727 F. Supp. 3d 661, 698 (W.D. Ky. 2024) (finding that where common questions of law all arose from the same 2016 data breach, "the questions of facts necessary to resolve these questions are common to the class."). Therefore, the commonality requirement is satisfied.

Third, the claims and defenses are typical of the settlement class. "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Lit.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The "claim is not typical if '[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.'" *Woodall v. Wayne Cnty, Mich.*, No. 20-1705, 2021 WL 5298537, at *4 (6th Cir. Nov. 15, 2021) (alteration in original) (quoting *Sprague*, 133 F.3d at 399). The commonality and typicality requirements "tend to merge." *Rikos v. The Proctor & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015) (quoting *Dukes*, 564 U.S. at 349 n.5). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. Here, because the Plaintiffs' claims all arise from the same data breach incident and same legal theory, resolving the claims of the named plaintiffs would resolve the claims of the entire class. *See Savidge*, 727 F. Supp. 3d at 700 (noting that "in several data breach cases, courts have found the typicality requirement satisfied").

Finally, the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The Sixth Circuit has articulated two criteria for determining

11

adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. at 576 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)). In addition, the Court should "determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)) (internal quotation marks omitted).

The named Plaintiffs have the same interests as the unnamed members of the class: seeking recovery for the data breach that compromised their personal information. The Plaintiffs "were all impacted by the same Data Breach and their claims present common questions of law and fact." (Doc. 33 at 11.) Counsel also represent the second prong is met in terms of Plaintiffs' prosecution of this case. Plaintiffs "have diligently and successfully prosecuted this Action on behalf of the Settlement Class, showing their interests and those of the other Settlement Class Members are aligned." (*Id.*) Class counsel has also met the requirements under Rule 23(g) that their representation has been adequate. Counsel put their extensive experience "to use in negotiating the early-stage Settlement guaranteeing immediate relief to the Settlement Class." (*Id.* at 12.) And counsel has extensive experience in this area. (Doc. 32-1; Doc. 32-2.). Therefore, the representation has been adequate.

### b. Rule 23(b) Requirements

The Class must also satisfy one of the three requirements of Rule 23(b). *Dukes*, 564 U.S. at 345. Plaintiffs contend the class satisfies Rule 23(b)(3), which permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for

12

the fair and efficient adjudication of the controversy. (Doc. 33 at 12.) (quoting Fed. R. Civ. P. 23(b)(3)). Plaintiffs must "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (alteration in original) (quoting *In re Visa Check/MasterMoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 136 (2d Cir. 2001)) (internal quotations omitted). At the preliminary approval stage, "the analysis of the predominance requirement must account for the fact that this class is proposed for settlement purposes only and that the alleged wrongdoing arises out of a common set of facts." *In re Flint Water Cases*, 499 F. Supp. 3d 399, 424 (E.D. Mich. 2021).

Here, the predominance requirement is met because the claims all arise out of the same conduct: a data breach that compromised personal information. Several questions common to all claims stem from this data breach; the existence of a duty, the breach of a duty, whether private information was compromised, and whether Defendant's conduct or failure to act was the proximate cause of the data breach. (Doc. 33 at 12–13.) All these individual issues stem from the same question about "Defendant's [] alleged failures to implement reasonable cybersecurity practices." (Doc. 33 at 12.) Because that common question "is at the heart of the litigation," the predominance requirement is met. *Powers v. Hamilton Cnty. Pub. Def. Com'n*, 501 F.3d 592, 619 (6th Cir. 2007).

The superiority requirement is also met. Superiority "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)). Courts should consider both the difficulties that may arise in managing a class action as well as the purpose of class action litigation. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452,

13

463–64 (6th Cir. 2020). "Relevant factors in this inquiry include: (1) the interests of the class members in individually controlling separate actions; (2) the extent and nature of the litigation already begun by members of the class; and (3) the desirability of concentrating the litigation in a particular forum." *In re Flint Water Cases*, 499 F. Supp. 3d at 425. "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers*, 501 F.3d at 619.

Here, there are over 130,000 individuals, which, as Plaintiffs note, would make individual adjudication of each claim "virtually impossible." (Doc. 33 at 13.) It would lead to a strain on judicial and advocate resources. Additionally, because potential damages to be claimed are small for each person individually relative to the cost of litigation, the incentives in this data breach case do not encourage individual plaintiffs to bring lawsuits. *See Hicks*, 965 F.3d at 463–64 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Young*, 693 F.3d at 545). Furthermore, the facts arise from a single course of wrongful conduct—the data breach incident. Therefore, a class action is the superior means of resolution.

Therefore, the requirements of Rule 23(a) and Rule 23(b)(3) are met, and the Court finds that it will likely be able to certify the class for purposes of approving the settlement. Accordingly, having decided that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class the purposes of judgment on the proposal," the Court will **PRELIMINARILY APPROVE** the settlement agreement. *See* Fed. R. Civ. P. 23(e)(1)(B)(i).

### B. Proposed Notice to Class Members

Next, the Court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). The Court must direct to

14

class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice should be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Meyers v. DTNA Trucks N. Am., LLC*, No. 14-2361, 2014 WL 12531121, at *9 (W.D. Tenn. Oct. 8, 2014) (quoting *UAW*, 497 F.3d at 629–30). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The proposed notice meets this requirement. A postcard notice will be sent by mail (Doc. 33 at 24) and, for those returned undeliverable without a forwarding address, "the Settlement Administrator will research a better address and re-send Notice." (*Id.*) It will also establish a toll-free telephone number "by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed." (*Id.* at 24.) Therefore, the notice is communicated by United States mail.

The notice must also clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed notice meets these requirements. It describes the nature of the action in that it describes the subject matter of the lawsuit, the data breach in question and the type of information that was compromised, and potential claims and defenses. (Doc. 31-1 at 52.) It defines the class (*id.* at 57) and states that members may appear at the final approval hearing either by themselves or through an attorney (*id.* at 52). And it provides adequate notice as

15

to exclusion. The notice explains how people can opt out of the settlement, with instructions on how to submit a written request for exclusion, where it must be sent, and the date by which it must be sent. (*Id.* at 61–62.) And it explains that the effect of a class judgment is binding on its members. (*Id.* at 51, 57, 63, 64.)

The notices to be sent out are clear and direct. They are organized by questions that are easy to read and comprehend, have a table of contents, and use plain language. Thus, the proposed notice adequately apprises the members of the class and affords them the opportunity to make informed decisions in accordance with the requirements of Rule 23(c) and due process. The Court will **APPROVE** the notice program and the opt-out/objection procedure (Doc. 31-1 at 55–70).

### C.  Appointment of Class Counsel and Class Representatives

Plaintiffs request that the Court appoint Leanna Loginov and J. Gerard Stranch as Class Counsel and appoint Plaintiffs as class representatives. (Doc. 31 at 2; Doc. 37 at 1.)

Federal Rule of Civil Procedure 23 authorizes the court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). When an applicant seeks appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate." Fed. R. Civ. P. 23(g)(2). To assess an applicant's adequacy to serve as class counsel, courts must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Further, any applicant the court appoints "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

16

For the reasons previously discussed regarding the likelihood of approval and the certification of the class, the Court finds that the representation here has been vigorous and counsel has dedicated expertise and resources in handling this case. Counsel has extensive experience with class actions, data breach litigation, and privacy litigaion. (Doc. 32-1 at 4, Doc. 32-2 at 3.) Therefore, the Court will **APPOINT** Leanna Loginov and J. Gerard Stranch as class counsel.

The Court also finds that the named Plaintiffs have fairly and adequately protected the interests of the class, as well as fulfilled their duties throughout the litigation. They "have been involved from the beginning" and have been active participants in the case, including by "providing information necessary to draft the Complaint, remaining available for consultation throughout litigation and Settlement talks, participating in Settlement discussions, and engaging in interviews with Class counsel." (Doc. 32 ¶ 19.) They also kept in contact with class counsel and were available to discuss the action. The Court will therefore conditionally **APPOINT** named Plaintiffs Michael Harris, Christopher Vaught, Caleb Nabors, Katelyn Butler, Brittany Kubba, and Dennis Goodine as class representatives for the settlement class.

## III.     CONCLUSION

The Court will **GRANT** the motion (Doc. 31) and preliminarily approve the proposed settlement agreement (Doc. 31-1). The Court will **APPOINT** Kroll Settlement Administration LLC as settlement administrator. The Court will **APPROVE** the proposed settlement notice plan and opt-out/objection procedures (Doc. 31-1 at 55–70) and **DIRECT** the settlement administrator to provide notice of the proposed settlement to the class members. The Court will **CONFIRM** Plaintiffs' Counsel as class counsel and will **APPOINT** Plaintiffs as class representatives. For good cause shown, the case will be **STAYED**. The Court will hold a final approval and fairness

17

hearing on **Thursday, July 23, 2026, at 2:00 p.m. Eastern Time** at the federal courthouse in

Chattanooga, Tennessee.

        **AN APPROPRIATE ORDER WILL ENTER.**

                        **/s/**_____

                        **CURTIS L. COLLIER**
                        **UNITED STATES DISTRICT JUDGE**

18